UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

IN RE:              }
THOMAS A. HACKNEY,  }    Case No. 07-40952-JJR-11
                    }
                    }    Chapter: 11
        Debtor.      }
                    }

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

LEIGH M. HACKNEY and  }
STEPHEN R. ARNOLD,    }
                    }
        Plaintiffs,  } Adversary Proceeding No. 07-40080
                    }
                    }
THOMAS A. HACKNEY,  }
                    }
        Defendant.  }

## MEMORANDUM OPINION

This Adversary Proceeding came before the Court for trial on July 28, 2008. At issue were the Complaint, as amended (AP Doc.'s 1 and 29, and herein the "Amended Complaint")[1] filed by plaintiffs, Leigh M. Hackney ("LMH") and her attorney, Stephen R. Arnold ("Arnold" and together with LMH, the "Plaintiffs"), and the Counterclaim (AP Doc.13) filed by defendant and debtor, Thomas A. Hackney ("Defendant").[2] The Amended Complaint alleged two obligations owing by

---

[1] Pleadings and other documents filed in the Adversary Proceeding are cited as "AP Doc. __."

[2] The Amended Complaint also asserted claims against First National Bank of Talladega, Excel Health Services of Alabama, Inc. and James Timothy Hackney, who were added as defendants. Before trial, the parties stipulated that claims against parties other than the Defendant would be severed, and if necessary, tried separately by this Court at a later date. (AP Doc's 72, 73, 79 and 82). The claims against these additional parties were also asserted pre-petition in a lawsuit now pending in the Circuit Court of Talladega County, Alabama. That suit was removed to this Court and thereafter remanded. (AP Doc. 45).

the Defendant, which arose out of a divorce proceeding, are nondischargeable under Sections 523(a)(5) and (15) of the Bankruptcy Code.[3]  The Counterclaim alleged the Plaintiffs were guilty of breach of contract, fraud, and abusive and outrageous conduct because they failed to abide by the parties' settlement reached in the Defendant's previous chapter 11 case.[4]  The claims asserted in the Amended Complaint and the Counterclaim are all core proceedings under 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order in this Adversary Proceeding.  In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of fact and conclusions of law.[5]

## SUMMARY OF OPINION:

The issues to be decided by the Court in this Adversary Proceeding are straight forward. Simply stated, the Plaintiffs assert the Defendant's obligation to obtain the release of a mortgage encumbering property conveyed to LMH in a divorce proceeding is a nondischargeable debt under the Bankruptcy Code.  The Plaintiffs also claim attorney's fees awarded to Arnold in the divorce proceeding are nondischargeable.  Unfortunately, the history of the parties' litigation that must be examined is extensive and complex and cannot be so concisely expressed.  The parties' disputes have fostered litigation for more than eight years in at least two Alabama circuit courts, an adversary proceeding in an earlier bankruptcy case, and appeals to the Alabama Court of Civil Appeals and the

---

[3]  11 U.S.C. § § 101 *et seq.*, and herein referred to as the "Bankruptcy Code."  The terms "Section" and "Sections"refer to sections, subsections or other divisions of the Bankruptcy Code.

[4]  The Defendant attempted to amend his Answer and Counterclaim (AP Doc. 24) after the deadline for amending pleadings established under the Scheduling Order. (AP Doc. 43).  The Plaintiffs filed a motion to strike the Defendant's amended pleadings (AP Doc. 47), which was granted as to the amended Counterclaim but denied as to the amended Answer. (AP Doc. 61).

[5]  All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Supreme Court of Alabama. As discussed below in more detail, the Court agrees with the Defendant and finds the dischargeability of the mortgage release obligation was unquestionably resolved in a court-approved settlement in the Defendant's previous bankruptcy case. Indeed, under the terms of the settlement reached through mediation, LMH was paid $450,000, and in return, she voluntarily dismissed *with prejudice* her adversary proceeding and bankruptcy claims, which included allegations the Defendant's mortgage release obligation was a nondischargeable debt in bankruptcy. The Plaintiffs make the same allegations in this Adversary Proceeding while ignoring the substantial payment LMH received from the Defendant to buy his peace and satisfy a nondischargeable judgment, and they disregard the *res judicata* bar created by the dismissal with prejudice of the Plaintiffs' prior claim. To allow the Plaintiffs to circumvent the parties' previous settlement would bestow an undeserved windfall upon LMH and result in a substantial miscarriage of justice.

Because the Court has concluded the issue of the dischargeability of the Defendant's debt underlying his obligation to obtain the mortgage release was previously resolved in his favor, that debt may be discharged in the present chapter 11 case if the Defendant is successful in confirming and consummating a plan of reorganization. If he is not successful, the debt will likely continue to plague the Defendant, unless he can obtain relief through the state court system.

Unlike the mortgage release obligation, the attorney's fees owing by the Defendant to the Plaintiffs were incurred after the parties' settlement, and they should be considered a domestic support obligation not subject to discharge under Section 523(a)(5). In light of the Plaintiffs' success in proving the attorney's fees are nondischargeable, and for other reasons discussed below, the Court rules against the Defendant and in favor of the Plaintiffs on the Defendant's Counterclaim.

3

*Domestic Relations Proceedings*

The parties' ongoing dispute arose from divorce and domestic relations proceedings (the "Domestic Proceedings") in the Circuit Court of Jefferson County, Alabama (the "Domestic Relations Court"). On April 25, 2000, the Domestic Relations Court entered a Final Judgment of Divorce (Plaintiffs' Ex.1 and herein, the "Judgment of Divorce")[6] dissolving the marriage between LMH and the Defendant. The Judgment of Divorce provided for, *inter alia*, the payment of child support and alimony and a division of property. As part of the division of property, in paragraph 45 of the Judgment of Divorce, LMH was awarded "all right, title and interest in all the acreage generally known by the parties as the Blue Springs Property." Additionally, the Defendant was ordered to "cause [the Blue Springs Property] to be released as security on any obligation owed by him or any of his separate business entities to the First National Bank of Talladega [the "Bank"] or any other lender or secured party," (the "Blue Springs Obligation"). On July 20, 2001, the Defendant executed a Statutory Warranty Deed conveying the Blue Springs Property to LMH (Plaintiffs' Ex. 2); however, he did not obtain a release of the Bank's mortgage.

During April or May 2002, LMH filed two pleading with the Domestic Relations Court.[7] The

---

[6] The exhibits admitted at trial are referred to as "Plaintiffs' Ex. __" or "Defendant's Ex. __." In some instances the Plaintiffs and the Defendant introduced the same documents as their exhibits (e.g. Defendant's Ex. 1 and Plaintiffs' Ex. 4 are both copies of the parties' Joint Motion for Approval of Compromise filed in the Defendant's First Bankruptcy Case). In those instances, only one exhibit is cited or referred to in this Opinion.

[7] After reviewing the Domestic Relations Court's stamps on the Counter Petition, the Amendment to Counter Petition (Defendant's Ex.'s 2b and 2c), and the certificates of service on those pleadings, it is impossible to determine exactly when the originals of those pleadings were filed. The Counter Petition is stamped, "Filed in Open Court May 23, 2002," but the certificate of service is dated April 22, 2002. The Amendment to Counter Petition is stamped, "Filed in

4

first pleading was entitled "Counter Petition to Modify and Amendment to Petition for Rule Nisi and Amendment to Motion for Declaratory Relief" (Defendant's Ex. 2b and herein, the "Counter Petition"). The second was entitled "Second Amendment to Counter Petition for Rule Nisi" (Defendant's Ex. 2c and herein the "Amendment to Counter Petition" and together with the Counter Petition, the "Amended Counter Petition"). In paragraph 3 of her Counter Petition, LMH alleged the following:

> Defendant was ordered in the Final Judgment of Divorce to recollaterilize [sic] or satisfy a certain line of credit owed to First National Bank of Talladega. Defendant has failed and refused to satisfy and/or recollateralize the line of credit secured by the Blue Springs property.
>
> * * * *
>
> Plaintiff alleges that Defendant has willfully and contumaciously violated the terms of the Final Judgment of Divorce by further encumbering Plaintiff's property. Plaintiff requests that this Honorable Court determine that Defendant is guilty of criminal contempt and thereafter incarcerate Defendant to the fullest extent allowed by law for each violation. Plaintiff further requests that this Honorable Court declare the obligation of Defendant described herein as being in the nature of alimony or support and therefore *non-dischargeable in bankruptcy* and/or modify the Final Judgment of Divorce to increase alimony. . . . (emphasis added).

In the Amendment to Counter Petition, LMH alleged the following in paragraph 2:

> This Court has previously ordered Defendant to satisfy or re-collateralize the mortgage secured by the "Blue Springs" property awarded to Plaintiff. Defendant has represented to this Court that he is unable to refinance, satisfy or re-collateralize the mortgage. At the time the original divorce trial was heard Defendant testified that the $500,000 line of credit associated with the mortgage secured by the Blue Springs property had been drawn to the extent of approximately $250,000.
>
> Since the rendering of the Final Judgment of Divorce Defendant has personally borrowed $300,000 to refinance his personal residence. Defendant has

---

Office May 08, 2002," but the certificate of service is dated April 30, 2002. In any event after reviewing all the circumstances, it is apparent they were filed some time after April 8, 2002, the date the First Bankruptcy Case (defined and discussed *infra*) was filed; they were matters pending in the Domestic Relations Court until they were dismissed as part of the parties' settlement discussed below.

Case 07-40080-JJR   Doc 94   Filed 10/10/08   Entered 10/10/08 15:47:08   Desc Main
Document   Page 5 of 34

made no good faith effort to comply with the Court's order regarding refinancing or recollateralizing the line of credit secured by the 'Blue Springs' property. In fact, Defendant has drawn an additional $250,000 against the line of credit secured by Plaintiff's property since April 20, 2000.

Plaintiff avers that Defendant's draw of the additional $250,000 further violates the provisions of the Final Judgment of Divorce and further encumbers the real property awarded to Plaintiff.

### *First Bankruptcy Case*

On April 8, 2002, the Defendant commenced his first case under chapter 11 of the Bankruptcy Code (case no. 02-02780 and herein, the "First Bankruptcy Case"). The First Bankruptcy Case was filed in the Southern Division of the U.S. Bankruptcy Court for the Northern District of Alabama (the "Southern Division Court").

LMH filed two proofs of claim in the First Bankruptcy Case (Defendant's Ex's 3 and 4): Claim #10 in the amount of $62,626.16 for alimony, maintenance or support; and Claim #11 for child support, alimony and property settlement for an "unknown amount." An attachment to Claim #11 described the various obligations for which the claim was filed, and item 8 of the attachment specifically asserted the following claim for the Blue Springs Obligation:

> The property described as "Blue Springs" was not completely transferred free and clear of all liens, pursuant to Item Forty-five (45) of the [Judgment of Divorce].

On August 13, 2002, in the First Bankruptcy Case, the Plaintiffs commenced an adversary proceeding (AP case no. 02-00198 and herein, the "First Case AP") by filing a "Complaint Objecting to the Discharge of the Debtor and to Determine the Dischargeability of Certain Domestic Obligations" (Defendant's Ex. 5 and herein, the "First AP Complaint"). In the First AP Complaint, the Plaintiffs objected to the general discharge of the Defendant

6

pursuant to Section 727(a) and sought a determination of the dischargeability under Section 523(a) of the Defendant's obligations under the Judgment of Divorce, which included the Blue Springs Obligation. Paragraph 19 of the First AP Complaint stated, "Attached as Exhibit 'B,' and incorporated herein is a copy of a claim filed by [LMH] in these proceedings, setting out the majority of the Items in the FINAL JUDGMENT OF DIVORCE that have not been complied with." Exhibit B was Claim #11 and its attachment; as mentioned above, Claim #11 specifically alleged the "Blue Springs [Property] was not completely transferred free and clear of liens, pursuant to Item Forty-five of the [Judgment of Divorce]."[8] Moreover, in paragraph 11 of the First AP Complaint the Plaintiffs acknowledged their Amended Counter Petition was pending before the Domestic Relations Court "alleging the . . . Defendant's failure to comply with certain provisions of the FINAL JUDGMENT OF DIVORCE."

In summary, bankruptcy Claim #11, the First AP Complaint, and the Amended Counter Petition, all specifically claimed the Defendant had failed to satisfy the Blue Springs Obligation and sought relief based on such claim, including a declaration the Blue Springs Obligation was not subject to discharge in bankruptcy.

---

[8] The copy of the First AP Complaint introduced into evidence as Defendant's Ex. 5 did not include a copy of Exhibit B (i.e. Claim #11) to the complaint. This Court takes judicial notice of all pleadings and other documents in its files. In the Court's file are copies of the original pleadings in the First Case AP, including the First AP Complaint. A copy of the original First AP Complaint with attached Exhibit B was made a part of the record in this Adversary Proceeding as AP Docs. 90, 91, 92, and 93.

7

*The Settlement*

The parties reached a settlement through mediation conducted by J. Thomas Corbett, Chief Deputy Bankruptcy Administrator, and on December 12, 2002, they filed a Joint Motion for Approval of Compromise in the First Bankruptcy Case and the First Case AP. (Defendant's Ex. 1 and herein, the "Joint Motion"). The parties sought court-approval of their settlement memorialized in a Memorandum of Settlement Agreement attached as an exhibit to the Joint Motion (the "Settlement Agreement"). The Joint Motion sets out several grounds as to why the Settlement Agreement was due to be approved, including paragraph (H)(c) which stated:

> Litigation of this adversary proceeding would involve interpretation of *Section 523(a)(2), (a)(5), and (a)(15)* and section 727 and their numerous defenses. . . . The issues and defenses in this action are extraordinarily complex and pose questions of fact and law including issues involving equity in the real property and the value of interests in various corporations. Thus, the litigation must be considered complex in nature. (emphasis added).

In their Joint Motion, the parties moved "for entry of an Order approving the compromise as set forth herein and in the Settlement Agreement . . ." and specifically requested the Court to order:

A.    The [First Case AP claiming, *inter alia*, the Blue Springs Obligation was nondischargeable] shall be dismissed *with prejudice*;

B.    The Motion to Allow Late Filed Claim of [Plaintiffs] shall be granted in part. Claim #10 shall be amended to allow [Plaintiffs] a priority claim in the amount of $450,000.00 with leave to amend if necessary upon a default in the Settlement Agreement. This claim shall be the only claim by [LMH and/or Arnold] in [the First Bankruptcy Case]. Claim #11 [asserting claims for, *inter alia*, the Blue Springs Obligation] shall be withdrawn *with prejudice*. [LMH and/or Arnold] shall have a judgment as stated in the attached Settlement Agreement which may be paid by payment in full of $450,000.00 . . . .

8

* * * *

E.     This motion shall be granted and the Settlement Agreement approved
       in all of its terms conditions as set forth therein.

* * * *

(Emphasis added).

The Settlement Agreement contained two significant provisions.  First, it provided
"[LMH] would be awarded a *nondischargeable* priority judgment" and bankruptcy claim in
the amount of $650,000 against the Defendant; however, the judgment and claim could be
satisfied if the Defendant paid $450,000 to LMH within 120 days of the approval of the
settlement.[9]  Second, the Settlement Agreement provided:

> Both parties shall dismiss *with prejudice* all proceedings against each other
> including *all* post-divorce matters presently pending in state court [i.e. the
> Amended Counter Petition making claims for, *inter alia*, the Blue Springs
> Obligation and its nondischargeability], the adversary proceeding in
> bankruptcy [i.e. the First Case AP claiming, *inter alia*, the Blue Springs
> Obligation was nondischargeable], and the motion for late filed claim.

Settlement Agreement ¶ 5, emphasis added.

On January 24, 2003, an Order was entered in the First Bankruptcy Case and First
Case AP granting the parties' Joint Motion and approving the proposed compromise.
(Defendant's Ex. 2e and herein, the "Settlement Approval Order").  On February 21, 2003,
pursuant to the Joint Motion and Settlement Agreement, a Judgment was entered in the First
Case AP against the Defendant and in favor of LMH in the amount of $450,000.
(Defendant's Ex. 12 and herein, the "Consent Judgment").  The Defendant paid the
$450,000, and on June 17, 2003, the Plaintiffs filed a Satisfaction of Judgment (Defendant's
Ex. 12, and herein, the "Satisfaction of Judgment") and Notice of Withdrawal of Claims

---

[9]  Settlement Agreement ¶ 1, emphasis added.

9

(Defendant's Ex. 2e and herein, the "Withdrawal of Claims")[10] in the First Bankruptcy Case.

*Implementation of Settlement in Domestic Proceedings*

The Defendant filed a Motion to Dismiss in the Domestic Relations Court (Defendant's Ex. 2d and herein, the "DR Motion to Dismiss"), which was served on Arnold on February 3, 2003. The Defendant moved for the dismissal of "all pending actions before this Court with prejudice," and as grounds therefor, referred to and attached copies of the Settlement Agreement and Settlement Approval Order. The Domestic Relations Court gave notice of and set the DR Motion to Dismiss for a hearing on February 28, 2003. On that date the Domestic Relations Court entered an Order granting the DR Motion to Dismiss and ordered "all pending pleadings in this matter be and the same are hereby dismissed." (Defendant's Ex. 2f and herein, the "DR Dismissal Order").[11] There was no itemized description of what pleadings were pending in the Domestic Proceedings when the DR Dismissal Order was entered. Nonetheless, the Amended Counter Petition would have been one of the "pending pleadings" dismissed pursuant to the DR Dismissal Order.[12]

*Post-Settlement Bankruptcy Proceedings*

On December 15, 2003, the Defendant filed a Second Amended Disclosure Statement

---

[10] The Notice of Withdrawal of Claims covered both Claim #10 and Claim #11; the latter included a claim for the Blue Springs Obligation.

[11] Although the DR Dismissal Order dismissed "all pending pleadings in this matter," it did not state the dismissal was with prejudice, as agreed in the Settlement Agreement.

[12] As mentioned above, in paragraph 11 of their First AP Complaint the Plaintiffs acknowledged the Amended Counter Petition was pending before the Domestic Relations Court. Thus, the Amended Counter Petition would have been one of the "pending pleadings" dismissed by the DR Dismissal Order.

10

in his First Bankruptcy Case (Defendant's Ex. 9 and herein, the "Disclosure Statement").

The Disclosure Statement stated in Article III, entitled "Events Leading to Bankruptcy," the following:

> Finally, Mr. Hackney was ordered to remove a lien on certain real property transferred to Ms. Hackney. The lien was on the property known as "Blue Springs" and was in the principal amount of $500,000.00 to First National Bank of Talledega [sic] for a loan Mr. Hackney had guaranteed for Excel Inc. Excel Inc. was unable to remove the lien and has defaulted on its payment. A complaint for judicial foreclosure has been filed by First National Bank of Talledega [sic] on the Blue Springs property.

In Article IV, entitled "Settlement of Domestic Issues," the Disclosure Statement stated:

> The parties agreed to have their disputes mediated by J. Thomas Corbett, Assistant Bankruptcy Administrator. After approximately 24 hours of mediation over three days, a settlement agreement was reached. The settlement agreement was approved by order of this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In summary, the settlement agreement provided that Ms. Hackney would have an allowed priority claim of $450,000.00. If the claim was not paid within 120 days of the date of the order approving the settlement agreement becomes final, the amount owed increases to $650,000.00. All other claims accept [sic] to future child support and alimony were waived. *This claim was paid in full.* (emphasis added).

In Article V, "Financial Information," item C-5-b, the two claims filed by the Plaintiffs were shown as "Disputed Claims"; "$0.00" was shown under the heading "Amount owed"; and "Paid subject to settlement agreement" was given as the "Reason for dispute." Further, in Article V, "Summary of the Plan," there was no provision to pay anything further to the Plaintiffs.

On January 12, 2004, a hearing was held by the Southern Division Court on approval

11

of the Disclosure Statement. Rule 2002(b) requires all creditors be given at least 25 days' notice of the time fixed for filing objections and of the hearing to consider approval of a disclosure statement. As creditors, the Plaintiffs would have been given notice of the hearing and an opportunity to object to the Disclosure Statement. On January 29, 2004, the Southern Division Court entered its "Order Approving Second Amended Disclosure Statement" (Defendant's Ex. 10 and herein, the "Disclosure Statement Approval Order").

In the Disclosure Statement Approval Order, the Southern Division Court identified the parties who attended the hearing: "Kimberly B. Glass, attorney for the Debtor, J. Thomas Corbett, Chief Deputy Bankruptcy Administrator,[13] and Mark Owsley, attorney for First National Bank of Talledega [sic]." Neither of the Plaintiffs appeared at the hearing. The order also described the objections that had been filed to the Disclosure Statement, none of which were filed by the Plaintiffs, and none of which concerned the Plaintiffs' claims. With a slight modification, the Disclosure Statement was approved.[14]

On March 15, 2004, the Defendant filed a Motion to Dismiss the First Bankruptcy Case. (Plaintiffs' Ex. 6, and herein, the "Bankruptcy Motion to Dismiss"). In the Bankruptcy Motion to Dismiss, the Defendant stated in paragraph 3 the following grounds

---

[13] Mr. Corbett conducted the mediation that resulted in the parties' settlement. It is noteworthy that Mr. Corbett did not object to the Disclosure Statement's description and treatment of the Plaintiffs' claims, including their being entitled to "$0.00" after the settlement.

[14] There should have been no expectation the Plaintiffs would object to the Disclosure Statement. Paragraph 1 of the Settlement Agreement states, "So long as any plan of reorganization filed by Defendant complies with the provisions of the Settlement Agreement, Plaintiff [LMH] shall not object thereto or vote against the confirmation of said plan." Moreover, after the Defendant paid LMH the agreed-upon sum of $450,000, LMH had nothing further to gain or lose from the First Bankruptcy Case.

12

for dismissal: "During the course of the [First Bankruptcy Case], the [Defendant and Plaintiffs] reached a compromise agreement and all of [the Plaintiffs'] claims in this case have been paid in full." According to the certificate of service on the Bankruptcy Motion to Dismiss, it was served on the parties shown on the attached matrix. The matrix would have included all creditors and other parties in interest in the First Bankruptcy Case, including the Plaintiffs. On March 18, 2004, the Southern Division entered an Order Dismissing Case (Plaintiffs' Ex. 7) in the First Bankruptcy Case. The Order provided the First Bankruptcy Case would be dismissed "unless a written objection and request for hearing is filed on or before April 9, 2004." No such objection and request for hearing were filed by the Plaintiffs or any other party in interest.

<em><u>Post-Settlement Enforcement in Domestic Proceedings</u></em>

Notwithstanding the Settlement Agreement, the Joint Motion, the Settlement Approval Order, the $450,000 payment by the Defendant to LMH, the Satisfaction of Judgment, the Notice of Withdrawal of Claims, the Disclosure Statement, the Disclosure Statement Approval Order, the DR Motion to Dismiss, and the DR Dismissal Order (the foregoing agreements, pleadings, court orders and notices, and the transactions represented thereby are collectively referred to herein as the "Settlement"), the parties were back in Domestic Relations Court on January 30, 2006 for a hearing on a Petition for Rule Nisi and Modification (the "Post-Settlement Petition") filed by LMH against the Defendant. A copy of the Post-Settlement Petition was not offered as evidence; however, the Plaintiffs introduced a transcript of a portion of the hearing at which the Post-Settlement Petition was

13

at issue (Plaintiffs' Ex. 8 and herein, the "First 2006 Transcript").[15]

As implausible as it might seem, the First 2006 Transcript disclosed the Post-Settlement Petition asserted yet another claim based on the Defendant's failure to satisfy the Blue Springs Obligation. The First 2006 Transcript reveals, over the objection of LMH's counsel, the Defendant's counsel argued the Settlement satisfied the Blue Springs Obligation and provided the Defendant with a *res judicata* defense to any claim made for that obligation.[16] The Domestic Relations Court did not immediately rule on the *res judicata* defense raised by the Defendant's counsel, and it took the issue under advisement.[17]

---

[15] As mentioned above, a copy of the Post-Settlement Petition was not introduced into evidence at the trial of this Adversary Proceeding. The Post-Settlement Petition was discussed in the First 2006 Transcript and in the Domestic Relations Court's Order dated on February 14, 2006 (Plaintiffs' Ex. 9, and defined *infra* as the "2006 Contempt Order").

[16] "THE [Domestic Relations] COURT: You're saying that the amended petition for Rule Nisi that was filed in this Court on December 20th, that's dated the 19th of December, that refers to . . . recollateralizing the . . . Blue Springs property per paragraph 45 of the final decree of divorce. That's already been resolved? That can't be before this Court at this time.
"MR. GORHAM [Defendant's counsel]: That's what I'm telling you, Judge. And what I was saying is you've got to look through their claims . . . filed . . . in the federal bankruptcy court. And this claim was addressed and there it is mentioned. The [Blue Springs Property] was not completely transferred free and clear of all liens pursuant to Item 45 [of the Judgment of Divorce]. . . .
"And then you've got to go down and take their settlement agreement that they signed apparently over three days of mediation . . . and they're talking that both parties shall dismiss with prejudice all proceedings against each other including . . . the adversary proceedings in bankruptcy. . . ." (Plaintiffs' Ex.8, pp.17, 18).

"MR. GORHAM: [I]f I go over there and settle a case in federal bankruptcy court, and I pay $450,000.00 to settle that claim, if that's not res judicata for this Court and vice versa, if you settle the same thing in this Court with prejudice, then it would be final on that federal bankruptcy court.
"But, Judge, I think it meets the evidence of res judicata . . . ." (*Id.*, pp. 34, 35).

[17] "THE COURT: You're suggesting that I go back and specifically . . . read the pleadings . . ., read whatever is contained in Defendant's 1, which I will admit, and then come

14

Following the January 30, 2006 hearing, the Domestic Relations Court entered an Order dated February 14, 2006 (Plaintiff's Ex. 9 and herein, the "2006 Contempt Order"). Paragraph 10 of the 2006 Contempt Order stated the Defendant had "failed to comply with the terms of Paragraph 45 of the [Judgment of Divorce] concerning the Blue Springs property and the release, pay off or substitution of collateral on said property" and held the Defendant in both civil and criminal contempt.

It is apparent from a review of the 2006 Contempt Order that the Post-Settlement Petition asserted claims against the Defendant for obligations under the Judgment of Divorce that, unlike the Blue Springs Obligation, accrued after and were not included in the Settlement. Thus, these non-accrued obligations were not matters pending at the time the Domestic Relations Court entered the DR Dismissal Order.[18] For example, in the 2006 Contempt Order, the Defendant was ordered to, *inter alia*, (1) provide proof of life insurance for the years 2005 and 2006; (2) stop copying the parties' children on e-mail correspondence between the parties; (3) pay tuition for the children to attend school; (4) not interfere with the treatment of the parties' son who was being cared for in a nursing home; (5) pay support obligations direct to the clerk of the Domestic Relations Court; and (6) pay Arnold $12,600

---

back to you lawyers and to the parties, . . . and let you know of my ruling on this specific item. . .
    "Let me take that under advisement with whatever else is on the plate here. I'll rule on that overnight. . . ." (Plaintiffs' Ex.8, pp. 35, 36).

[18]   In paragraph 6 of the 2006 Contempt Order the Defendant was ordered to provide proof of insurance for the years 2005 and 2006. On page 11 of the 2006 Transcript, the Defendant's counsel mentions that an amended Rule Nisi [i.e. the Post-Settlement Petition] was filed by Arnold on December 20th [2005]. Thus, the Post-Settlement Petition adjudicated during the January 30, 2006 hearing was filed after the DR Dismissal Order, which was entered February 28, 2003.

15

for his professional services rendered on behalf of LMH.[19]   But most significantly, the Domestic Relations Court made no findings regarding the Settlement or otherwise addressed the *res judicata* defense raised by the Defendant; it did not explain why the Settlement failed to exonerate the Defendant from the Blue Springs Obligation; and it provided no insight regarding the dischargeability of the Blue Springs Obligation in a bankruptcy context.

On March 16, 2006, the Defendant filed a Motion to Alter, Amend or Vacate with the Domestic Relations Court (Plaintiff's Ex. 10 and herein the "DR Motion to Alter").   In the DR Motion to Alter, the Defendant again argued the Settlement Agreement, the Settlement Approval Order, the Defendant's payment of $450,000 to satisfy the Consent Judgment, and the dismissal of the First Case AP with prejudice, satisfied all elements for a *res judicata* defense, and he asked the Domestic Relations Court to vacate any relief in the 2006 Contempt Order based on the Blue Springs Obligation.   The DR Motion to Alter was never expressly ruled on, and it was deemed overruled by lapse of time.[20]   Again there were no findings by the Domestic Relations Court explaining why the Settlement did not extinguish any further claim based on the Defendant's Blue Springs Obligation.

The Plaintiffs introduced a transcript of a portion of a hearing before the Domestic Relations Court held on December 19, 2006 (Plaintiffs' Ex. 12 and herein, the "Second 2006 Transcript").   The Second 2006 Transcript did not disclose the purpose of the hearing or

---

[19]   The $12,600 awarded to Arnold in the 2006 Contempt Order is claimed by the Plaintiffs in their Amended Complaint to be a nondischargeable domestic support obligation under Section 523(a)(5).

[20]   Plaintiffs' Ex. 17 ¶ 6e.   Rule 59.1 of the Alabama Rules of Civil Procedure provides that the failure of a court to rule on a post-trial motion within 90 days, unless such time is extended, constitutes a denial of such motion.

16

what issues were then being litigated. The Settlement was once again brought to the attention of the Domestic Relations Court during that hearing, and the court expressed having a vague memory of the Settlement being discussed during the January 30, 2006 hearing. *Id.* Nonetheless, the Domestic Relations Court provided no further insight into its reasoning of why the Settlement did not dispose of the Blue Springs Obligation in the Domestic Proceedings.

<u>Return to Bankruptcy Court</u>

After the Domestic Relations Court rejected, without comment, the Defendant's argument that his Blue Springs Obligation was satisfied under the Settlement, the Defendant turned to the Southern Division Court for relief. The Defendant filed a Motion to Reopen (Plaintiffs' Ex. 15) his First Bankruptcy Case pursuant to Section 350(b) for the purpose of enforcing the Settlement Approval Order. Citing *In re Woodhaven, Ltd.*, 139 B.R. 745, 747 (Bankr. N.D. Ala. 1992), the Southern Division Court ruled Section 350(b) authorized the re-opening of cases that were closed but not cases that had been dismissed (Plaintiffs' Ex. 19).[21] The Southern Division Court also stated that even if it were inclined to grant the motion, it would not attempt to undo the 2006 Contempt Order.[22]

---

[21] Plaintiffs' Exhibit 19 is a copy of the Memorandum Opinion and Order Denying Motion to Reopen Case entered on January 12, 2007 in the First Bankruptcy Case.

[22] It is important to recognize the Southern Division Court made no ruling on whether the Blue Springs Obligation was subject to discharge under the terms of the Settlement if the Defendant had been successful in confirming and consummating a plan in the First Bankruptcy Case or was successful in confirming and consummating a plan in a later bankruptcy case. What the Southern Division Court made clear was it was not going to reopen the dismissed First Bankruptcy Case and thereby jump into the fray that, notwithstanding the Settlement, continued in the Domestic Relations Court.

17

On May 31, 2007, the Defendant filed his second chapter 11 case in this Court (case no. 07-40952 and herein, the "Second Bankruptcy Case").[23]

*State Court Appeals*

Plaintiffs' Exhibit 13 is a Certificate of Completion of Clerk's Record pertaining to an appeal of the 2006 Contempt Order to the Alabama Court of Civil Appeals. Nothing was introduced indicating whether the appeal has been heard or ruled on by the Court of Civil Appeals. Nonetheless, based on statements of counsel, this Court understands the Court of Civil Appeals affirmed the 2006 Contempt Order, and the Defendant petitioned for and was granted *certiorari* by the Supreme Court of Alabama. This Court was also informed by counsel that further appellate proceedings had been stayed by the Supreme Court of Alabama because of the Defendant's pending Second Bankruptcy Case.

CONCLUSIONS OF LAW:

*A "look behind" the 2006 Contempt Order*

The Plaintiffs' position is there is no need for the Court to look beyond the 2006 Contempt Order to determine the dischargeability of the Blue Springs Obligation. It is undisputed the Blue Springs Obligation was originally either a domestic support obligation, or if not a domestic support obligation, at least a debt owing to a former spouse incurred in the course of a divorce. Thus, if the Settlement is not taken into account, the obligation remains a debt that falls within one of the exceptions to discharge carved out by Sections

---

[23] In his petition filed in the Second Bankruptcy Case, the Defendant stated he was a resident of Talladega County, which is in the Eastern Division of the Northern District of Alabama. When the Defendant filed his First Bankruptcy Case, he stated he was a resident of Jefferson County, which is in the Southern Division. No creditor or other party in interest challenged the change in residency claimed by the Defendant.

18

523(a)(5) and (15).

On the other hand, the Defendant argues that the Court should "look behind" the 2006 Contempt Order and consider the Settlement's impact on the issue of dischargeability. The Court agrees with the Defendant.

According to the United States Supreme Court, it is appropriate for a bankruptcy court to look behind a facile disposition of an underlying pre-petition proceeding between a creditor and debtor to determine whether a debt should be excepted from discharge under Section 523(a). *Archer v. Warner*, 538 U.S. 314 (2003); *Brown v. Felsen*, 442 U.S. 127 (1979). In the *Archer* case, the creditor sued the debtors in state court claiming fraud. The parties settled, and the creditor released the debtors in exchange for cash and a promissory note. The debtors filed bankruptcy, and the creditor alleged the debt represented by the promissory note was nondischargeable under Section 523(a)(2)(A). The lower courts held the debt was subject to discharge because the note replaced the original debt incurred through fraud. The Supreme Court reversed the lower courts and held the creditor could show the original debt was a product of the debtors' fraud and consequently nondischargeable. Similarly, in *Brown* the Supreme Court reversed the lower courts and held the bankruptcy court should have looked beyond a stipulation and settlement reached in state court to determine whether the underlying debt was incurred through fraud and thus not subject to discharge. *Brown*, *supra*.

In *American Wagering, Inc. v. Racusin* (*In re American Wagering, Inc.*) 326 B.R.

449 (9th Cir. B.A.P. 2005),[24] the appellate panel stated:

> The parties agree that it is appropriate for this Panel to look behind [the claimant's] district court judgment, and to examine the underlying facts to determine whether [the claimant's] claim should be subordinated [under Section 510(b)]. This accord rests on solid grounds. In construing other provisions of the bankruptcy code, the United States Supreme Court has found it appropriate to look behind the disposition (whether by judgment or settlement) of underlying prepetition proceedings between a creditor and the debtor.

*Id.* at 452.

Likewise, in *Weissmann v. Pre-Press Graphics Co., Inc.* (*In re Pre-Press Graphics Co., Inc.*), 307 B.R. 65 (N.D. Ill. 2004) the district court affirmed the holding of the bankruptcy court, stating:

> Given the broad definition of "claim" and the Supreme Court's willingness to look to the substance of claims in assessing whether they are nondischargeable in bankruptcy due to fraud, the court finds that for purposes of § 510(b), [the claimant's] "claim" should be determined according to the substance of his state court claims and not limited to the type relief granted by the state court.

*Id.* at 72-73.

If it is permissible for a bankruptcy court to look behind a state court judgment to find a debt is not dischargeable, the reverse is also true, and the court may look behind the judgment and conclude a debt is dischargeable.[25] Moreover, while it is permissible for a

---

[24] Reversed on other grounds 465 F.3d 1048, opinion withdrawn and superseded on rehearing 493 F.3d 1067.

[25] If the Defendant had not paid the $450,000 Consent Judgment entered by the Southern Division Court (Defendant's Ex. 12), this Court could look behind the judgment, and in particular at the Settlement Agreement, Joint Motion and Settlement Approval Order, to determine the debt underlying the judgment was not subject to discharge. The Consent Judgment itself said nothing regarding its dischargeability; however, the Settlement Agreement provided the judgment represented a nondischargeable claim.

20

bankruptcy court to look behind or beyond a state court judgment to determine the dischargeability of a debt, it is imperative to do so when the court is considering a judgment, like the 2006 Contempt Order, which makes no findings of fact and does not otherwise provide a basis from which the bankruptcy court can determine whether the underlying debt is subject to discharge in a bankruptcy case. A state court's order enforcing collection of a debt, without more, provides a bankruptcy court with little guidance regarding the dischargeability of that debt. In the instant case, for whatever reason, the Domestic Relations Court continued to hold the Defendant liable for the Blue Springs Obligation after the Settlement. Although the Settlement was raised as a defense by Defendant's counsel, the Domestic Relations Court made no findings, gave no explanation or otherwise expressed any opinion regarding the effect of the Settlement on the Blue Springs Obligation. The 2006 Contempt Order simply held the Defendant in contempt for not satisfying the Bank's mortgage. Perhaps more significantly, the Domestic Relations Court made no finding or ruling on the dischargeability of the Blue Springs Obligation in a bankruptcy context.[26]

### Dismissal With Prejudice

Section 101(14A) defines the term "domestic support obligation" as a debt . . . owed to . . . a former spouse . . . in the nature of alimony, maintenance, or support, established . . . by reason of applicable provisions of a divorce decree [or] order of a court of record." Section 523(a)(5) excludes domestic support obligations from discharge under Section 1141

---

[26] In paragraph 3 of her Counter Petition filed in the Domestic Proceedings, LMH asked the Domestic Relations Court to "declare the [Blue Springs] obligation of Defendant described herein as being in the nature of alimony or support and therefore *non-dischargeable in bankruptcy* . . . ." Notwithstanding this request, the 2006 Contempt Order did not address that issue.

Case 07-40080-JJR    Doc 94    Filed 10/10/08    Entered 10/10/08 15:47:08    Desc Main
Document    Page 21 of 34

(applicable to chapter 11 cases). Likewise, Section 523(a)(15) provides, "[a] discharge under section 1141 . . . does not discharge an individual debtor from any debt . . . to a former spouse that is incurred by the debtor . . . in connection with a . . . divorce decree . . . ." Thus, if the Blue Springs Obligation was not a domestic support obligation, it was at least a debt incurred in connection with the Judgment of Divorce, and in either case, was *originally* a nondischargeable debt under Section 523(a)(5) or (15). However, if its status was changed pursuant to the Settlement, it is of no consequence that it was previously nondischargeable.

A critical element of the Settlement was the parties' agreement to dismiss with prejudice the state and bankruptcy claims based on the Blue Springs Obligation, including the claim the Blue Springs Obligation was a nondischargeable debt under the Bankruptcy Code. A dismissal with prejudice is the equivalent of a final judgment on the merits. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865 (1955) (applying *res judicata* when prior lawsuit was dismissed with prejudice); *see also Kaspar Wire Works, Inc., v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 534 (5th Cir. 1978) ("It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action."). Consequently, the Settlement had the same effect as though the Plaintiffs had fully litigated all their claims based on the Blue Springs Obligation in the Southern Division Court and the Domestic Relations Court and as though final judgments were entered by both courts in favor of the Defendant declaring the Blue Springs Obligation was a dischargeable debt in bankruptcy.

22

The Plaintiffs argue after entry of the 2006 Contempt Order, the doctrine of *res judicata* barred the Defendant from claiming the Blue Springs Obligation is a dischargeable debt. On the other hand, the Defendant argues after the Settlement the same doctrine bars the Plaintiffs from claiming the same obligation is nondischargeable. *Res judicata* precludes the same parties from pursuing claims actually raised, or that could have been raised, in prior litigation involving the same operative facts where there was a final adjudication of such claims. *Marlow v. Sweet Antiques (In re Marlow)*, 216 B.R. 975, 979 (Bankr. N.D. Ala. 1998). The 2006 Contempt Order held the Defendant in contempt, but it made no ruling on the *dischargeability* of the Blue Springs Obligation. To the contrary, the Settlement (which included the dismissal with prejudice of the First Case AP and the Satisfaction of Judgment) had the effect of a final adjudication of the dischargeability issue in favor of the Defendant. The nondischargeability of the Blue Springs Obligation was asserted as a claim against the Defendant by the Plaintiffs in the First Case AP and again in this Adversary Proceeding. The operative facts in the First Case AP are the same as those in this Adversary Proceeding; in the First Case AP the Plaintiffs received a nondischargeable Consent Judgment in their favor, which included the debt underlying the Blue Springs Obligation; after being paid $450,000, the Plaintiffs satisfied the Consent Judgment; finally, all claims regarding the dischargeability of the Blue Springs Obligation were dismissed with prejudice. Thus by virtue of the Settlement, there was a final adjudication in favor of the Defendant in the First Case AP of the claim which asserted the Blue Springs Obligation was a nondischargeable debt. The Plaintiffs are barred from further litigating that claim in this Adversary

23

Proceeding.[27]

*Judicial Estoppel*

The principles of judicial estoppel also bar the Plaintiffs' nondischargeability claim in this Adversary Proceeding with respect to the Blue Springs Obligation. Judicial estoppel protects the integrity of the judicial process. "The doctrine may be applied to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814 (2001). [The Eleventh Circuit has] examined two factors in deciding whether judicial estoppel should apply: first, it must be established that the allegedly inconsistent positions were made under oath in a prior proceeding; and, second, the inconsistencies must have been calculated to make a mockery of the judicial system. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005).[28]

---

[27] As discussed above in the Findings of Fact, as part and parcel of the Settlement, the Southern Division Court entered a $450,000 Consent Judgment in favor of the Plaintiffs and against the Defendant (Defendant's Ex. 12). The Settlement Agreement provided the judgment was nondischargeable. This money judgment represented the adjudicated claims raised by the Plaintiffs in the First Case AP, including the claim asserting the Blue Springs Obligation was a nondischargeable debt. The Defendant paid the judgment, and in recognition thereof, the Plaintiffs filed a satisfaction of the judgment. These facts are a textbook example of *res judicata*. Change the facts slightly and assume the judgment had been entered against a tortfeasor for damages arising out of a tort claim, and the judgment was later paid by the tortfeasor, and then satisfied by the injured party. If the injured party was bold enough to file another suit to recover damages for the same injury, his claim would be barred. The same principle that would preclude another suit against the tortfeasor bars the Plaintiffs in this case from relitigating the claims they pursued in the First Case AP.

[28] "Pleadings, as well as statements by parties and counsel in open court, are equivalent to sworn statements for purposes of judicial estoppel." *In re Cummings*, 381 B.R. 810, 827 (S.D. Fla. 2007).

24

The district court in *In re Cummings*, 381 B.R. 810 (S.D. Fla. 2007) concisely outlined the elements of judicial estoppel as follows:

> In considering the flexible standard of the judicial estoppel doctrine, courts traditionally look at three factors: (1) whether a party's later position is clearly inconsistent with its earlier positions; (2) whether a party succeeded in persuading a court to accept an earlier position, so that judicial acceptance of an inconsistent position creates the impression that either the first or the second court was misled; and, (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 826-27.

After giving effect to the Settlement, the position of LMH in the First Case AP was the Blue Springs Obligation was a dischargeable debt; she was paid $450,000 to take that position. LMH persuaded the Southern Division and the Defendant that she would take that position. In the Second Bankruptcy Case, she wants this Court to ignore the Settlement and rule the debt is now nondischargeable. In other words, LMH intends to give up nothing she received under the Settlement and would deprive the Defendant of the benefits for which he bargained and paid. LMH has taken inconsistent positions which, if allowed, will impose a substantial and unfair detriment on the Defendant, make a mockery of the court-approved settlement, and give LMH an undeserved windfall.

### *Court-Approved Settlement Agreement*

*Res judicata* and judicial estoppel aside, if nothing else, the Settlement should be enforced as a binding contract among the parties. Court-approved settlement agreements are no less enforceable than agreements entered into outside of court. *See U.S. v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975) ("since consent decrees and orders have many of the same attributes of ordinary contracts, they should be construed basically as contracts."); *see also*

25

*Wicker v. Oregon*, 2008 U.S. App. LEXIS 19722 (9th Cir., Sept. 17, 2008) ("Because a consent decree has attributes of both a contract and a judicial act, courts use contract principles in construing it." *Wicker* at *11, *quoting Washington v. Penwell*, 700 F.2d 570, 573 (9th Cir. 1983), abrogated on other grounds); *Strouse v. J. Kinson Cook, Inc.*, 634 F. 883, 885 (5th Cir. 1981) ("Although a consent decree is a judgment, it is to be construed for enforcement purposes as a contract. Under the rules of construction applicable to consent agreements, the contract of consent, *as the law between the parties*, must be enforced as written." citations omitted, emphasis added). To encourage litigants to settle their differences through court-sanctioned agreements, the enforceability of such agreements should be closely guarded. Courts should not allow themselves to be unwittingly used as a contrivance in the breach or avoidance of such agreements. This Court is unaware of any authority prohibiting a creditor and debtor from reaching an agreement to change the status of an otherwise nondischargeable debt to one subject to discharge in a bankruptcy context, which is what happened here. [29]

In *Halpern v. First Georgia Bank* (*In re Halpern*) 810 F.2d 1061 (11th Cir. 1987), the circuit court held issue preclusion in a dischargeability case was properly utilized by a bankruptcy court, which made findings of fact based on an earlier consent judgment. In affirming the bankruptcy and district courts' rulings, the Eleventh Circuit stated:

---

[29] The Court has no doubt the parties did not intend for the Blue Springs Obligation to survive the Settlement in any form or fashion, whether in bankruptcy court or otherwise. Nonetheless, as discussed *infra*, unless and until the Defendant receives a discharge in his Second Bankruptcy Case, or if the Second Bankruptcy Case fails, receives a discharge in a subsequent bankruptcy case, there is little this Court can do regarding the enforceability of the Blue Springs Obligation outside of bankruptcy.

26

We agree with the bankruptcy court and the district court that here the parties intended that the consent judgment operate as a final adjudication of the factual issues contained therein. The factual findings in the consent judgment are sufficiently detailed to leave little doubt as to their meaning. . . . . Moreover, the consent judgment on its face evinces that Halpern received consideration in exchange for agreeing that the judgment would constitute a final adjudication of the findings. There is no evidence of coercion or duress, and the consent judgment was signed by both Halpern and by his attorney. Under such circumstances, the bankruptcy court correctly concluded that "[a] chilling effect on consent judgments and settlements might result if the court were to ignore such a clear and unambiguous expression of the parties' intent."

*Id*. at 1064-1065.[30]

Under the Settlement reached in the First Case AP,[31] the agreed-upon and court-approved transformation of the Blue Springs Obligation to a dischargeable debt was not limited to the First Bankruptcy Case. LMH received all the consideration she bargained for under the Settlement. The Defendant paid $450,000, and in return, LMH satisfied the otherwise nondischargeable Consent Judgment entered by the Southern Division Court;

---

[30] Footnote 5 in the *Halpern* opinion stated the "consideration consisted of First Georgia's agreement to accept $250,000.00 in full satisfaction of Halpern's $337,000.00 debt . . . ." Apparently Halpern failed to pay the consideration to First Georgia and was denied a discharge based on the findings in the consent judgment. In the instant case, the consideration to be paid by the Defendant to LMH was $450,000 in full satisfaction of a nondischargeable judgment, and the dismissal with prejudice of the First Case AP and the Amended Counter Petition. Unlike the debtor in *Halpern*, the Defendant in the instant case paid the agreed-upon consideration. If a bankruptcy court may utilize a consent judgment to make findings to preclude a debtor from relitigating the issue of dischargeability, the reverse must also be true: a consent judgment (the Settlement Agreement, Settlement Approval Order and other Settlement related documents in this case) may be utilized by this Court as a basis to find LMH, a creditor, is precluded from relitigating the issue of dischargeability of the Blue Springs Obligation.

[31] Adversary proceedings in bankruptcy cases are essentially civil actions between creditors, debtors, trustees and other parties in interests. Like any other litigation, adversary proceedings may, and often do, adjudicate rights that transcend the underlying bankruptcy case. For example, an adjudication in an adversary proceeding that determines ownership of property will bind the parties outside the bankruptcy context.

27

LMH withdrew *with prejudice* the proof of claim (Claim #11) for the Blue Springs Obligation,[32] and she dismissed *with prejudice* the First Case AP, which alleged the Blue Springs Obligation was nondischargeable.[33]  Without a doubt, and this is perhaps the crucial point, if the Defendant had confirmed and consummated a plan in his First Bankruptcy Case, LMH would not have been entitled to receive anything further with respect to the Blue Springs Obligation, and that obligation would have been fully discharged under Section 1141(d).  Why should LMH be entitled to receive anything more in the Second Bankruptcy Case?  The effect of the Settlement was a final adjudication that the Blue Springs Obligation would be treated as a dischargeable debt in bankruptcy.  It would be unconscionable to ignore the Settlement and permit LMH to revive the Blue Springs Obligation as a nondischargeable debt.[34]  Simply stated, although the Blue Springs Obligation originally was

---

[32]  A proof of claim filed by a creditor in a bankruptcy case is tantamount to filing a civil action complaint to collect a debt.  *Cooley v. Wells Fargo Financial (In re Cooley)*, 362 B.R. 514, 518-19 (Bankr. N.D. Ala. 2007), *citing Coxson v. Commonwealth Mortg. Co. of Am., L.P. (In re Coxson)*, 43 F.3d 189, 194 (5th Cir. 1995).  The dismissal of a bankruptcy claim with prejudice has the same effect on the underlying debt as when a civil action complaint is dismissed with prejudice.  Any attempt to enforce that debt is barred by *res judicata.  See, e.g., Lawler v. Guild, Hagen & Clark, LTD (In re Lawler)*, 106 B.R. 943, 962 (N.D. Tex. 1989) (Dismissal with prejudice of law firm's proof of claim provided debtor with defensive relief to the same extent as malpractice counterclaim would have provided if proof of claim had not been dismissed).  *See also In re Varona*, 388 B.R. 705, 726 (Bankr. E.D. Va. 2008) ("A motion to withdraw a claim in the Bankruptcy Court has been analogized to a motion to withdraw a complaint, and thus the considerations underlying Federal Rule of Civil Procedure 41(a) apply to a motion to withdraw a proof of claim.").

[33]  As mentioned above in the findings of facts, pursuant to the Settlement, LMH caused her Amended Counter Petition, which sought enforcement of the Blue Springs Obligation, to be dismissed in the Domestic Relations Court.  Under the terms of the Settlement Agreement, that dismissal was to be with prejudice.

[34]  Perhaps an example will better explain why the Settlement in the First Bankruptcy Case should also apply in the Second Bankruptcy Case:  Assume P alleges he is a secured

a nondischargeable debt under Section 523(a)(5) or (15), the Settlement (a court-approved agreement) converted that obligation into a dischargeable debt.

*Attorney's Fees*

The Plaintiffs also contend the $12,600 attorney's fee awarded to Arnold under the 2006 Contempt Order is a debt excepted from discharge under Section 523(a)(5). This Court agrees with the Plaintiffs on this issue. The Judgment of Divorce created obligations for the Defendant in addition to the Blue Springs Obligation. Some of these other obligations, unlike the Blue Springs Obligation, accrued or arose after the Settlement. The 2006 Contempt Order enforced the Defendant's obligations to (i) pay child support for a period after the Settlement, (ii) provide proof of life insurance for the years 2005 and 2006, and (iii) pay private school tuition. It also ordered the Defendant to stop sending copies of emails between the parties to their children and to not interfere with the nursing home care of one

---

creditor of D and files suit in state court to enforce his security interest in D's property. D files chapter 11 bankruptcy. P files a secured claim in D's chapter 11 case, and D responds by objecting to the P's claim. P and D reach a court-approved settlement. Under the terms of their settlement, D pays P a substantial sum of money, P withdraws his secured claim with prejudice, and agrees to release his security interest and dismiss his state court suit with prejudice. D cannot reach an agreement with his other creditors and dismisses his chapter 11 case. Hearing of the dismissal of D's bankruptcy case, P files another suit in state court seeking to enforce his security interest in the same property. The state court disregards the settlement reached in the bankruptcy court and enters an order directing the sheriff to hold a foreclosure sale of D's property. Before the sale, D files another chapter 11 bankruptcy case in which P files another secured claim covering the same debt and security. D files a chapter 11 plan proposing to pay nothing to P. The bankruptcy court properly confirms D's plan over P's objection. For the same reason P is not entitled to a secured claim (or an unsecured claim for that matter) in D's second bankruptcy case, LMH is not entitled to a nondischargeable claim in the Defendant's Second Bankruptcy Case. *See The Academy Inc. v. James, Hoyer, Newcomer, and Smiljanich, P.A. (In re The Academy, Inc.)*, 289 B.R 230, 234 (Bankr. M.D. Fla. 2003) (permitting creditor to withdraw its proof of claim, but emphasizing the withdrawal is with prejudice because the "interests of finality mandate that the [creditors] keep no strings attached to their withdrawal such that they could attempt to revive their claims against the [debtor] in the future.").

29

of the parties' children. The Settlement did not cover these additional obligations, and the legal expenses incurred by LMH in connection with their enforcement are part and parcel of the domestic support obligations awarded to her by the Domestic Relations Court.

Under Section 523(a)(5), whether a debt is actually in the nature of support is a question of federal law to be determined by the bankruptcy court, and the court makes a simple inquiry into whether the obligation was intended by the parties at creation to function as support. *Bell v. Bell (In re Bell)*, 357 B.R. 167, 172 (Bankr. M.D. Ala. 2006). "[A] majority of courts have held that attorney's fees awarded in a divorce proceeding are nondischargeable." *Id.*, citing *Hataway v. Welch (In re Welch)*, 2006 WL 1998759 (Bankr. M.D. Ala. June 22, 2006). The award of attorney's fees is contained in paragraph 4 of the 2006 Contempt Order, in the midst of several other Domestic Relations Court findings and conclusions. Because the award of attorney's fees in the 2006 Contempt Order is so "inextricably intertwined with the obligation of support so as to be in the nature of support," the fees are excepted from discharge in bankruptcy pursuant to Section 523(a)(5). *Bell*, 357 B.R. at 173.

It is true a portion of Arnold's fees could be attributed to enforcement of the Blue Springs Obligation; however, the Court will not attempt to apportion the fees between those earned in connection with enforcing obligations not covered by the Settlement and those earned in connection with enforcing the Blue Springs Obligation. First, there was no evidence upon which the Court could calculate an apportionment of the fees. Second, because of the limited attention given to the Settlement by the Domestic Relations Court, it does not appear it was necessary for Arnold to spend much time or effort in connection with

30

the Blue Springs Obligation.

### Defendant's Counterclaim

The Defendant's Counterclaim alleged the Plaintiffs were guilty of breach of contract, fraud, and abusive and outrageous conduct because they failed to adhere to the Settlement. The Court construes the Counterclaim as asserting a claim under the Alabama Litigation Accountability Act. Ala. Code 1975, § 12-19-270 *et seq.* An element for liability under this Act is a determination by the court that the accused party brought an action, or asserted a claim, "without substantial justification, either in whole or part." Because the Plaintiffs first obtained the 2006 Contempt Order before they filed this Adversary Proceeding, the Court does not find the Plaintiffs were without substantial justification in bringing their claims in this Adversary Proceeding. Moreover, the Plaintiffs did prevail on their claim regarding the nondischargeability of Arnold's fees. Thus, the Court finds the Defendant is not entitled to recover under his Counterclaim.

### Impact on 2006 Contempt Order

Beyond the automatic stay of Section 362(a), this Court is making no attempt to interfere with the enforcement of the 2006 Contempt Order or to impose this Court's interpretation of the Settlement on the Domestic Relations Court. However, should the Defendant confirm and consummate a chapter 11 plan in his Second Bankruptcy Case, the Blue Springs Obligation will be subject to discharge to the same extent as it would have been in the First Bankruptcy Case after giving effect to the Settlement. Unless and until the Defendant obtains a discharge, this Court can offer no lasting protection from the enforcement of the 2006 Contempt Order. If the Defendant achieves a discharge, that may

31

change.  *See DiGeronimo v. Weissberg* (*In re DiGeronimo*)*,* 354 B.R. 625, 641-42 (Bankr. E.D. N.Y. 2006); *see also Lenke v. Tischler* (*In re Lenke*), 249 B.R. 1, 8 (Bankr. D. Ariz. 2000) ("It is also essential . . . that bankruptcy courts retain such injunctive power to enforce the discharge.  Absent such power, federal bankruptcy courts would lack the ability to enforce the supremacy of the bankruptcy law, and states would be free to re-institute debtors' prisons should they so choose.").

Likewise, this Court's opinion is not an attempt to reverse the 2006 Contempt Order; this Bankruptcy Court does not sit as an appellate court to review such orders.  *Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  However, state courts lack authority to modify or dissolve a bankruptcy court's order.  *See McGhan v. Rutz* (*In re McGhan*), 288 F.3d 1172 (9th Cir. 2002); *Lenke, supra.*  The culmination of the Settlement proceedings in the Southern Division Court (a federal bankruptcy court) was tantamount to an order of that court determining the Blue Springs Obligation was a dischargeable debt.  Such a determination is not subject to collateral attack by state courts.  *See Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F. 3d 1074 (9th Cir. 2000).  To find the 2006 Contempt Order was a denial of the Defendant's right to a discharge of the Blue Springs Obligation would effectively modify the Southern Division Court's Settlement Approval Order, which provided for the Blue Springs Obligation to be a dischargeable debt upon payment of the Consent Judgment; the Consent Judgment was paid and satisfied.  The Domestic Relations Court lacked authority to make such a modification, and its 2006 Contempt Order should not be construed as an attempt by that court to exceed its authority.

32

Under the allegations of their original Complaint, which were incorporated into their Amended Complaint, the Plaintiffs asked for a judgment "[g]ranting such other and further relief as may be justified by the facts in this case." Further relief is appropriate in this case.

As mentioned above, absent a discharge in this or another bankruptcy case, the 2006 Contempt Order, to the extent it continues to enforce the Blue Springs Obligation, will remain in full force and effect unless there is a reversal by the Alabama Court of Civil Appeals or the Alabama Supreme Court. While the automatic stay of Section 362(a) temporarily protects the Defendant's bankruptcy estate, without a discharge, this Court is not in a position to provide permanent relief to the Defendant from enforcement of the Blue Springs Obligation. Further, there is no certainty the Defendant will achieve a discharge in his Second Bankruptcy Case, or if that case fails, any subsequent bankruptcy case. Thus, the Court finds there is good cause to allow the parties to complete their appeal through the state court system with respect to the 2006 Contempt Order and especially on the issue of whether the Defendant's liability for the Blue Springs Obligation was extinguished in the Settlement. The automatic stay imposed by Section 362(a) is due to be terminated for cause, but only to the extent necessary to allow the parties to pursue all available appeals with respect to the 2006 Contempt Order in the Alabama Court of Civil Appeals and the Alabama Supreme Court.

CONCLUSION:

(A) In the Second Bankruptcy Case, if the Defendant becomes entitled to a discharge

33

pursuant to Section 1141(d) of the Bankruptcy Code, the Blue Springs Obligation shall be treated as a fully dischargeable debt. When LMH was paid $450,000 pursuant to the Settlement, she received all the consideration she was entitled to receive for the Blue Springs Obligation to be treated as a fully dischargeable debt in bankruptcy.

(B) The attorney's fee due Arnold in the amount of $12,600, awarded by the Domestic Relations Court in the 2006 Contempt Order, is a domestic support obligation and is, therefore, not subject to discharge pursuant to Section 523(a)(5).

(C) The Defendant is not entitled to any recovery on his Counterclaim.

(D) To the extent the automatic stay imposed by Section 362(a) may be applicable to any appeal to the Alabama Court of Civil Appeals or Alabama Supreme Court with regard to the 2006 Contempt Order, and in particular the Blue Springs Obligation, such stay is terminated; provided that the issue of dischargeability of the Blue Springs Obligation has been determined by this Court and shall not be subject to review by the state courts.

Pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure a separate Order will be entered in conformity with this Opinion.

Dated: October 10, 2008

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

34